[Tagged]



**ORDERED in the Southern District of Florida on January 15, 2016.**

Erik P. Kimball, Judge
United States Bankruptcy Court
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                           CASE NO.:14-29027-EPK
                                                 CHAPTER 11
TRIGEANT HOLDINGS, *et al.*,                     Jointly Administered

    Debtors.
_____/
BTB REFINING, LLC,

    Plaintiff,

v.                                               ADV. PROC. NO.: 15-01634-EPK

TRIGEANT, LTD, BERRY GP, INC.,
BERRY CONTRACTING, L.P. d/b/a
BAY, LTD., and GRAVITY MIDSTREAM
CORPUS CHRISTI, LLC,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS

The claims presented in this adversary proceeding against Gravity Midstream Corpus Christi, LLC ("Gravity") have been released under the terms of a final, non-appealable order

1

of this Court confirming a chapter 11 plan in the above-captioned jointly administered cases and in the plan confirmed thereby. In addition, the plaintiff's claim for tortious interference is not supported by a single concrete factual allegation. For these reasons, as more fully addressed below, the Defendant Gravity Midstream Corpus Christi, LLC's Motion to Dismiss the Amended Complaint (the "Motion") [ECF No. 15] will be granted and this adversary proceeding will be dismissed as to Gravity. The plaintiff will be permitted leave to amend, but only to state a claim for tortious interference that arises from acts or occurrences after June 5, 2015.

The debtors in the jointly administered bankruptcy cases related to this adversary proceeding are Trigeant, Ltd. ("Trigeant"), Trigeant Holdings, Ltd. ("Holdings"), and Trigeant, LLC ("TLLC") (collectively, the "Debtors"). Trigeant operated a petroleum refinery in Corpus Christi, Texas. The refinery property is close to but does not abut a navigable waterway. So that Trigeant could more easily ship, load, and unload petroleum products at its refinery, Trigeant, Berry GP, Inc. ("Berry") and Berry Contracting, L.P. d/b/a Bay, Ltd. ("Bay" and, together with Berry, "Bay/Berry") entered into a Dock Use, Construction, Maintenance and Option Agreement dated November 1, 2001 (the "Dock Use Agreement"). Among other things, the Dock Use Agreement provided Trigeant with the ability to use a dock and related assets adjacent to the refinery. Later, on March 24, 2006, Trigeant leased to Berry approximately 23.29 acres in Corpus Christie, Texas.

In December, 2006, Trigeant (as borrower) entered into a credit agreement and certain collateral documents with a commercial lender pursuant to which the lender obtained a first lien on substantially all of Trigeant's assets. Trigeant defaulted under the credit agreement. BTB Refining, LLC ("BTB"), the plaintiff in this adversary proceeding, purchased the debt and related collateral rights from the original lender. In March, 2008, BTB foreclosed on all

of Trigeant's real property (the "Real Property") via public auction (the "March 2008 Foreclosure").  BTB purchased the Real Property at auction via credit bid.  The March 2008 Foreclosure did not affect Trigeant's personal property.

Prior to the March 2008 Foreclosure, in January, 2008, BTB and Trigeant executed an amendment to the original debt, and Trigeant borrowed additional funds from BTB.  Those additional borrowings were also secured by a lien on Trigeant's Real Property and by a lien on all of Trigeant's personal property (the "Personal Property").  By June 2008, Trigeant had defaulted on repayment of these later advances and BTB gave notice that the Personal Property would be sold at public foreclosure sale.  On September 8, 2008, BTB caused the public foreclosure sale of the Personal Property under Texas law (the "September 2008 Foreclosure").  BTB purchased the Personal Property via credit bid.  This Court later determined that the Dock Use Agreement was foreclosed in the September 2008 Foreclosure.

A judgment creditor of Trigeant then filed suit in federal court in the Southern District of Texas to avoid the March 2008 Foreclosure as a fraudulent transfer.  A judgment entered in that case avoided the March 2008 Foreclosure, re-vested the Real Property in Trigeant, and (with certain limitations not relevant here) reinstated all of the debt and collateral rights held by BTB.  The September 2008 Foreclosure was not affected by that ruling, and so the Personal Property remained with BTB.

In August and September of 2014, the three Debtors filed voluntary petitions under chapter 11, commencing the above-captioned jointly administered cases.  The Debtors eventually sought confirmation of the Debtors' Third Amended Chapter 11 Plan of Reorganization [ECF No. 567 in main case number 14-29027-EPK (as amended, the "Plan")]. The Plan incorporated an Asset Purchase Agreement (the "APA") among the Debtors and Gravity, under which the Debtors would sell substantially all of their assets to Gravity for

approximately $100 million.

The Court entered its Order Confirming Debtors' Third Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code and Granting Final Approval of Disclosure Statement [ECF No. 589 in the main case (the "Confirmation Order")] on May 5, 2015.  The Confirmation Order also authorized and approved the so-called Sargeant Settlement Agreement, entered into by the Debtors, BTB, and various other parties.  The Sargeant Settlement Agreement amended the Plan to include an indemnification provision. Under this indemnity, the Debtors agreed to indemnify BTB, its principal Harry Sargeant III, and related entities, in respect to certain defined claims relating to, *inter alia,* the Dock Use Agreement, up to a maximum amount of $3,300,000.00.  Under the Plan, the Debtors set aside a reserve from proceeds of the sale to cover any payments due under the indemnity.

The Debtors closed on the sale to Gravity, and the effective date of the Plan occurred, on June 5, 2015 (the "Effective Date").  [ECF No. 631 in the main case]

A few weeks prior to the Effective Date, on May 12, 2015, Bay/Berry sued BTB in Texas (the "Texas Action").  In the Texas Action, Bay/Berry seeks, *inter alia,* (i) damages in excess of $3,000,000.00 against BTB for its alleged breach of the Dock Use Agreement since September 2008, and (ii) a declaration that the Dock Use Agreement is terminated.  BTB disputes the amount claimed by Bay/Berry in the Texas Action but, pursuant to court order in that action, paid $2,200,000.00 on June 29, 2015.  Bay/Berry continues to claim it is entitled to terminate the Dock Use Agreement.

Although Gravity, as new owner of the refinery, may receive and dispense petroleum products via truck and rail, it is beneficial to the refinery to have access to the dock that is the subject of the Dock Use Agreement.  However, BTB claims exclusive rights to use and possession of the dock under the Dock Use Agreement.  BTB alleges, upon information and

belief, that Gravity has intentionally and unjustifiably encouraged and induced Bay/Berry to purportedly terminate BTB's rights under the Dock Use Agreement so that Gravity can gain use and possession of the dock from Bay/Berry. BTB claims it has been damaged by Gravity's tortious interference with BTB's rights under the Dock Use Agreement.

Gravity argues that the Amended Complaint should be dismissed against Gravity. Gravity argues both that BTB granted broad and unconditional releases to Gravity, pursuant to the Plan and Confirmation Order, with respect to any acts that occurred on or prior to the June 5, 2015 Effective Date, and that the Amended Complaint does not meet the pleading standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The background set forth above is from the Amended Complaint and is therefore taken as true for purposes of the Motion now before the Court.

Taking Gravity's second argument first, the Court agrees that the Amended Complaint does not adequately allege a claim for tortious interference against Gravity. The Amended Complaint lacks basic allegations central to a claim of tortious interference. The principal allegation required for the claim, that Gravity "encouraged and induced Bay/Berry to purportedly terminate BTB's rights under the Dock Use Agreement," is alleged entirely "upon information and belief." In other words, not a single specific fact is stated as to how or when Gravity encouraged or induced Bay/Berry to act. While individual factual allegations may be made "upon information and belief," the phrase as used in the Amended Complaint goes to the center of the claim presented. A claim cannot be based on mere suspicion. As it relates to Gravity, the Amended Complaint fails to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court next considers Gravity's first argument, that BTB, in the Plan and Confirmation Order, released Gravity from the very claim BTB attempts to pursue here.

BTB responds that the release is an affirmative defense and that this affirmative defense is not properly the basis for a motion to dismiss under rule 12(b)(6) (made applicable here by Fed. R. Bankr. P. 7012) but must be raised in Gravity's answer to the Amended Complaint.  Generally, an affirmative defense is raised under rule 8(c) (made applicable to this adversary proceeding by Fed. R. Bankr. P. 7008), but the Court may consider a rule 12(b)(6) motion on such grounds where the existence of the defense can be determined from the face of the complaint. *See Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982). Ordinarily, in ruling on a motion to dismiss the Court may consider only the complaint and documents attached to the complaint. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997).  The Court may consider a document not attached to the complaint if: (1) the plaintiff refers to the document in the complaint; (2) the document is central to the plaintiff's claim; (3) the contents of the document are not in dispute; and (4) the document is attached to the defendant's motion to dismiss. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).  All four requirements are present here. The Court may rule on the release argument at this stage of the proceedings.[1]

The question is whether the releases contained in the Plan and Confirmation Order prohibit BTB from pursuing the present tortious interference claim against Gravity.

The Plan states:

> 11.10. <u>Releases</u>.
>
> * * *

---

[1] In the main case, Gravity filed a motion to enforce the Confirmation Order and Plan [ECF No. 700], presenting the same arguments addressed in the present Motion.  The Court denied the motion to enforce in favor of ruling on the issue in this adversary proceeding.

6

(c) *Mutual Release of Harry Parties and Buyer and EFM.* In consideration of the Sargeant Settlement and the transaction contemplated by the APA, the Harry Parties shall release unconditionally and forever each of the Buyer and the EFM and each of their respective Related Parties, and each of the Buyer and EFM shall release unconditionally and forever each Harry Release Party, from any and all claims, demands, causes of action and the like, existing as of the Effective Date or thereafter arising from any act, omission, event or other occurrence that occurred on or prior to the Effective Date including without limitation in respect of the Debtors, the Purchased Assets or the Debtors' bankruptcy cases.

The Confirmation Order states:

53. In consideration of the Sargeant Settlement and the transaction contemplated by the APA, the Harry Parties shall hereby release unconditionally and forever each of the Buyer, EFM and the DIP Lender and each of their respective Related Parties, and each of the Buyer, EFM and the DIP Lender shall hereby release unconditionally and forever each Harry Release Party, from any and all claims, demands, causes of action and the like, existing as of the Effective Date or thereafter arising from any act, omission, event or other occurrence that occurred on or prior to the Effective Date including without limitation in respect of the Debtors, the Purchased Assets or the Debtors' bankruptcy cases.

Gravity is the "Buyer" identified in the foregoing release provisions. BTB is one of the "Harry Parties." Through the release provisions of the Plan and Confirmation Order, BTB gave Gravity a broad general release of any claims arising from acts that occurred on or prior to the June 5, 2015 Effective Date.

The timing of any acts alleged to support BTB's tortious interference claim against Gravity is crucial to whether BTB might pursue a claim. Even if Gravity in fact caused Bay/Berry to attempt to terminate the Dock Use Agreement, if Gravity did so on or prior to June 5, 2015 the resulting claim was released. BTB argues that the release provisions were agreed to weeks prior to the June 5, 2015 Effective Date, and that Gravity may have taken advantage of the gap period to act in a manner that Gravity knew would be subject to the release when the Effective Date later arrived. BTB agreed ahead of time that claims

resulting from any such acts would be released and should be bound by that agreement. Even so, BTB provides no hint of what Gravity might have done in this regard. In light of the release provisions of the Plan and Confirmation Order, if no other provisions apply, BTB may not continue with a tortious interference claim against Gravity unless that claim arises from acts after June 5, 2015.[2]

BTB argues that its claim against Gravity survives in light of Section 11.12(iv) of the Plan.[3] Section 11.12(iv) is a limitation on the release provisions. It provides:

> Notwithstanding anything to the contrary set forth in this Plan . . . Section 11.10 ("Releases") shall not . . . (iv) release or otherwise diminish the obligations or liabilities of any Released Party with respect to any matter unrelated to the Purchased Assets.

Even if a claim would otherwise be covered by the release provisions of the Plan and Confirmation Order, if the matter is "unrelated to the Purchased Assets" it was not released. Stated another way, only claims related to the Purchased Assets were released.

There is no question that the Dock Use Agreement was not a Purchased Asset. But that does not end the inquiry. The limitation of Section 11.12(iv) does not constrict the general release to claims specifically concerning the Purchased Assets. Not only is such a

---

[2] The Court notes that the Texas Action was filed on May 12, 2015, several weeks prior to the June 5, 2015 Effective Date. In the Texas Action, Bay/Berry explicitly challenges BTB's rights under the Dock Use Agreement. If Gravity had anything to do with the filing of the Texas Action, and Gravity's involvement might otherwise support a claim for tortious interference, that claim was released. In light of the timing of the Texas Action, it seems very unlikely BTB could allege facts to support a non-released tortious interference claim against Gravity. However, rather than dismiss the Amended Complaint with prejudice as to the claim against Gravity, thus prohibiting the pursuit of any claim that may theoretically exist, the Court will permit BTB to amend if it can state a non-released claim.

[3] Though the release provisions appear in the Plan and in substantially the same form in the Confirmation Order, Section 11.12(iv) appears only in the Plan. This does not mean, however, that the limitation in Section 11.12(iv) was deleted by negative implication. Paragraph 59 of the Confirmation Order provides that the "failure specifically to include any particular provisions of the . . . Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision. . . ."

narrow interpretation of the general release provisions inconsistent with the text of the Plan and Confirmation Order, but in the context of this case it would make no sense. If the release was to be limited to disputes concerning the Purchased Assets themselves, the text of the release would be much less broad and certain affected parties would not even need to be mentioned.

The claims preserved by Section 11.12(iv) are those involving matters "unrelated to the Purchased Assets." So if a claim is related to the Purchased Assets, and otherwise covered by the terms of the release, it is subject to the release.

Other than the Purchased Assets themselves, there is no asset or agreement of the Debtors that is more closely related to the Purchased Assets. The Dock Use Agreement is a multi-faceted contract affecting property of Bay/Berry and the refinery property formerly owned by Trigeant and now owned by Gravity. The refinery is the ultimate Purchased Asset. The status of the Dock Use Agreement was so central to the proposed sale of the refinery that the bankruptcy estate and (the Court must assume) BTB expended many tens of thousands of dollars on legal fees, in this and the Debtors' prior chapter 11 cases, litigating over the fate of the Dock Use Agreement. The status of the Dock Use Agreement was at the core of both chapter 11 cases because of its potential impact on the use of the Debtors' primary asset. When the Court determined that the Dock Use Agreement could not be sold by the Debtors, a settlement was soon reached and the confirmation of the Plan and the sale moved forward. The release at issue here was a key component of that settlement. Given BTB's own extensive litigation in this Court with regard to the Dock Use Agreement and how it fit into the Debtors' proposed asset sale, it is disingenuous of BTB to argue that the Dock Use Agreement is somehow not related to the assets sold by the Debtors. Any claim that Gravity, the buyer of the Purchased Assets, has tortiously interfered with the Dock Use Agreement, is not a claim

"unrelated to the Purchased Assets." Section 11.12(iv) has no impact on such a claim.

The releases contained in the Plan and Confirmation Order bar BTB's tortious interference claim against Gravity, as currently stated, and the Amended Complaint will be dismissed as against Gravity. The Court should freely give leave to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7015. BTB will be permitted to file a further amended complaint stating specific allegations of tortious interference arising from acts of Gravity after June 5, 2015.

Accordingly, it is

ORDERED AND ADJUDGED that:

1. The *Defendant Gravity Midstream Corpus Christi, LLC's Motion to Dismiss the Amended Complaint* (the "Motion") [ECF No. 15] is GRANTED and Count IV (tortious interference with contract) is dismissed.

2. BTB may file an amended complaint consistent with this order no later than fourteen (14) days after entry of this order.

###

Copies Furnished To:
Luis Salazar, Esq.

*Luis Salazar, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service.*